UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL MECHANICAL SERVICES, INC., a California corporation,<br><br>    Plaintiff,<br><br>v.<br><br>KINSALE INSURANCE COMPANY, an Arkansas corporation; MERCER INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1-50, inclusive,<br><br>    Defendants. | Case No.: 22-cv-576-CAB-AGS<br><br>**ORDER GRANTING DEFENDANT KINSALE INSURANCE COMPANY'S MOTION TO DISMISS**<br><br>[Doc. No. 9] |

This matter is before the Court on Defendant Kinsale Insurance Company's ("Kinsale") motion to dismiss Plaintiff National Mechanical Services, Inc.'s ("NMS") complaint. [Doc. No. 9.]  The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1).  For the reasons set forth below, Kinsale's motion to dismiss is **GRANTED**.

### I.     BACKGROUND

Plaintiff NMS filed the operative complaint in San Diego Superior Court on March 24, 2022, against Defendants Kinsale and Mercer Insurance Company ("Mercer").  [Doc.

No. 1-2.]  Mercer removed the matter to federal court on April 25, 2022.  [Doc. No. 1.] The following is a summary of the allegations taken from NMS's complaint.[1]

NMS is in the business of maintaining, repairing, and servicing generators in power plants, refineries, and petrochemical plants across the United States.  [Doc. No. 1-2 ¶ 1.] NMS holds a commercial general liability insurance policy with Kinsale, policy number 0100013169-7 (the "CGL Policy"), and a commercial excess liability insurance policy with Mercer, policy number 27306433 (the "Excess Policy").  [*Id.* ¶¶ 3, 5.]  Both policies were in effect from July 21, 2020, to July 21, 2021.  [*Id.*]

In May 2021, NMS was hired by Onward Energy ("Onward") to perform preventative maintenance on three of Onward's generators, labeled the #2, #4, and #6 generators.  [*Id.* ¶ 13.]  Onward agreed to pay NMS $273,021 for the maintenance work and prepaid a portion as a deposit.  [*Id.*]  On May 3, 2021, NMS began work on the #4 and #6 generators.  [*Id.* ¶ 14.]  NMS removed and shipped the #6 generator's bearings to JD's Babbitt Bearing, a third-party business, for refurbishment.  [*Id.* ¶ 15.]  JD's Babbitt Bearing installed a steel threaded metal plug into the non-driven end bearing's main lube supply hole, which NMS contends should not have been installed.  [*Id.* ¶ 17.]  NMS received the refurbished bearings on May 11, 2021, and after cleaning, inspecting, and measuring the bearings, reinstalled them into the #6 generator.  [*Id.* ¶ 19.]  When site operators started the #6 generator on May 13, 2021, the generator "tripped offline" and began to emit a burnt smell, causing damage to the generator.  [*Id.* ¶¶ 20-22.]  As a result, the #6 generator had

---

[1] Kinsale requests that the Court take judicial notice of NMS's complaint filed on March 24, 2022.  [Doc. No. 9-2.]  NMS's complaint was attached to the Notice of Removal [Doc. No. 1-2 at 4-168] and is the basis of the Court's review on a motion to dismiss, so judicial notice is not necessary.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (internal citations omitted). To the extent that Kinsale seeks judicial notice of the CGL Policy and Excess Policy, the policies are attached as exhibits to the complaint and may also be considered on a motion to dismiss.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint . . . —without converting the motion to dismiss into a motion for summary judgment.").  Thus, Kinsale's request for judicial notice is **DENIED AS MOOT**.

to be repaired and did not operate until October 30, 2021.  [*Id.* ¶ 29.]  NMS completed its work on the #4 generator with no incident, but Onward declined service on the #2 generator following the damage to the #6 generator.  [*Id.* ¶¶ 23, 30.]

NMS invoiced Onward for all work done on the #4 generator, all work done on the #6 generator up until the damage, and the projected costs for the #2 generator, totaling $118,026.75.  [*Id.* ¶ 30.]  While Onward paid NMS for setting up and taking down its rotor table during the reinstallation process, it did not pay NMS for its staff and equipment used in the repair of the #6 generator.  [*Id.* ¶ 29.]  Onward then invoiced NMS for all costs related to repairing the #6 generator from the date of damage up to August 26, 2021, totaling over $1.35 million.  [*Id.* ¶¶ 29, 36.]  Onward now refuses to pay NMS's $118,026.75 invoice until NMS pays Onward its $1.35 million repair costs, which Onward and NMS expect to be covered by NMS's insurance policies with Defendants.  [*Id.* ¶ 30.]

On May 20, 2021, NMS's owner, Elizabeth da Silva, contacted NMS's insurance agent at Kinsale, Judy Schwartz, to inform her of the incident with the #6 generator.  [*Id.* ¶ 33.]  On May 21, 2021, Schwartz emailed Kinsale to file a claim on behalf of NMS.  [*Id.*]  On May 22, 2021, Lynne Wood responded on behalf of Kinsale that the claim was assigned to her for handling as claim number 00023488.  [*Id.*]  On May 24, 2021, Wood informed da Silva that NMS's claim would likely not be covered because the damage was caused by NMS's negligence, but the next day told da Silva that Kinsale would "take another look at the claim to see if it was coverable."  [*Id.* ¶ 34.]

Between mid-2021 and the filing of NMS's complaint, very little communication took place between NMS and Kinsale.  [*Id.* ¶ 35.]  Wood "rarely" returned da Silva's phone calls and messages.  [*Id.*]  Schwartz inquired about the claim status with Kinsale several times but was told each time that Kinsale was still reviewing the matter.  [*Id.*]  On November 4, 2021, NMS sent Kinsale all final invoices from Onward and NMS.  [*Id.* ¶ 36.]  On December 3, 2021, NMS sent Wood the complete report, pictures, invoices, and loss time invoices relating to the generator incident, and confirmed with Wood on December 15, 2021, that they had been sent to her.  [*Id.* ¶ 38.]

In January 2022, Wood informed da Silva over the phone that "a good chunk of [the claim] looks like it will be covered." [*Id.* ¶ 39.] Neither Wood nor any other Kinsale representative stated that they required anything further to process NMS's claim. [*Id.*] On January 31, 2022, Wood informed NMS that she had a reservation of rights letter in her possession that she would review and send by the end of the week, but NMS did not receive the letter. [*Id.* ¶ 40.] On February 14, 2022, NMS sent a letter to Wood demanding that Kinsale provide full coverage for the claim within fourteen days, which Wood acknowledged as received but did not otherwise respond to. [*Id.* ¶ 43.] NMS then filed the present complaint against Kinsale and Mercer on March 24, 2022. As of the date of its complaint, NMS had not received any resolution or other response from Kinsale. [*Id.*]

NMS's complaint asserts three causes of action for: (1) declaratory relief against both defendants, declaring that each defendant is obligated to cover NMS's insurance claim arising out of the #6 generator damage; (2) injunctive relief against both defendants, directing each defendant to pay NMS's insurance claim; and (3) breach of the implied covenant of good faith and fair dealing, brought against Kinsale only. [*Id.* ¶¶ 44-72.] On June 16, 2022, Kinsale moved to dismiss NMS's complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). [Doc. No. 9.] The motion is now fully briefed.

## II.     LEGAL STANDARD

Whether a claim is "ripe" for adjudication goes to a court's subject matter jurisdiction, which may be challenged in a motion to dismiss under Rule 12(b)(1). *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010) ("The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring . . . that claims be 'ripe' for adjudication.") (internal citation omitted). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). "[R]ipeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's

purported injury is too speculative and may never occur." *Chandler*, 598 F.3d at 1122. "The central concern of the ripeness inquiry is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* at 1122-23. In the context of private party disputes where one party seeks a declaratory judgment, the Ninth Circuit has recognized the standard for ripeness as "whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

### III. DISCUSSION

The Court sits in diversity jurisdiction and therefore applies California substantive law to its analysis. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Neither party disputes that California law governs here.

### A. Declaratory and Injunctive Relief Claims

NMS contends that the May 13, 2021, incident triggered coverage under the CGL Policy and the Excess Policy because NMS "bec[a]me obligated to pay for the property damage to [the #6 generator]" when it "was invoiced $1,357,756.53 for Onward's expenses to repair the physical damage . . . [and] for the loss of use of it." [Doc. No. 1-2 ¶ 48.] NMS states that coverage under the CGL Policy was triggered because the incident resulted in "property damage" that occurred in the "coverage territory" during the policy period, and any amount of property damage exceeding the CGL Policy's $1 million limit should be covered by the Excess Policy. [*Id.*] NMS seeks a declaration that Kinsale is obligated to cover its claim—in other words, that Kinsale has a duty to defend and indemnify NMS as to Onward's alleged damages—and that Mercer is obligated to cover any amount above the CGL Policy limit. [*Id.* ¶¶ 53-54.] NMS also seeks an injunction from this Court directing Kinsale to pay Onward and NMS their respective damages arising out of the May 13, 2021, incident, and directing Mercer to pay any damages above the CGL Policy's limit. [*Id.* ¶¶ 59-60.]

In its motion to dismiss, Kinsale asserts that it has no present duty to defend NMS as to Onward's "claim" for the #6 generator damage and its lost profits because no "suit" has been filed to trigger its coverage obligation. [Doc. No. 9-1 at 21.] Where there is no duty to defend, Kinsale argues, there can be no duty to indemnify, so Kinsale is under no obligation to pay Onward or NMS for damages arising out of the May 13, 2021, incident. [*Id.* at 15.] Accordingly, Kinsale contends that NMS's claims for declaratory and injunctive relief are unripe and should be dismissed for lack of subject-matter jurisdiction. The Court agrees.

The Court begins by looking to the CGL Policy's insuring clause, which "is the foundation of the agreement and forms the basis for all obligations owed to the insured." *Dominguez v. Fin. Indem. Co.*, 107 Cal. Rptr. 3d 739, 748 (2010). The CGL Policy's insuring clause states, in relevant part:

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

[Doc. No. 1-2 at 36.][2] The CGL Policy defines "suit" as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." [*Id.* at 51.] The policy does not define the term "claim."

In *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 878 (1998), the Supreme Court of California made clear that only a civil action initiated by the filing of a complaint constitutes a "suit" triggering an insurer's duty to defend, and "[a]nything short of this is a 'claim.'" Analyzing similar policy language to that at issue here, the court distinguished between suits and claims by noting that "[w]hile a claim may ultimately ripen into a suit, 'claim' and 'suit' are not synonymous." *Id.* at 879 (internal citation omitted). While "the insurers are *required* to defend a 'suit,' [they] have *discretion* to investigate and settle a 'claim.'" *Id.* at 878 (emphasis added). Accordingly, an insurer's duty to defend generally "arises when the insured tenders defense of [a] third party lawsuit to the insurer." *Id.* at 886.

In this matter, while Onward is "considering suing NMS," no civil action has been filed by any party relating to the incident on May 13, 2021. [Doc. No. 1-2 ¶ 42.] Moreover,

---

[2] The Court notes that this language "echoes the standard language found in many other CGL policies." *See Harper Constr. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 377 F. Supp. 3d 1134, 1144 (S.D. Cal. 2019) (collecting cases).

NMS concedes that Onward's "claim" for property damage is not a "suit" as defined by the CGL Policy. [Doc. No. 15-1 at 13.] NMS argues that its present lawsuit against Kinsale and Mercer satisfies the "suit" requirement but provides no basis in the law to support its position.[3] Rather, the "clear and explicit meaning" of the CGL Policy, "interpreted in [its] ordinary and popular sense" (*Hovannisian v. First Am. Title Ins. Co.*, 221 Cal. Rptr. 3d 883, 891-92 (2017)), indicates that Kinsale only has a duty to defend NMS against civil lawsuits seeking damages because of "bodily injury or property damage." [Doc. No. 1-2 at 36.] No such lawsuit exists here.

Based on the allegations in the complaint and the attached CGL Policy, NMS cannot establish that Kinsale or Mercer have any present duty to defend it against Onward's claim relating to the #6 generator damage. "[W]here there is no duty to defend, there *cannot be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal. 4th 945, 958 (2001) (*Powerine*) (internal citation omitted). "Proceeding from *Foster–Gardner* to this case . . . the insurer's duty to indemnify the insured for 'all sums that the insured becomes legally obligated to pay as damages' under the standard comprehensive general liability insurance policy is limited to money ordered by a court." *Id.* at 960. Therefore, without any legal obligation for NMS to pay damages, Kinsale and Mercer are not presently required to indemnify NMS for any claim related to the #6 generator damage either.

NMS's claims for declaratory and injunctive relief are both premised on a determination that Kinsale and Mercer are required under their respective policies to defend and indemnify NMS for the #6 generator damage. Because there is no present obligation for either defendant to defend or indemnify NMS—and no such obligation can exist unless and until NMS is sued and/or found liable for the damage in a civil lawsuit— NMS's claims are not yet ripe for adjudication. The Court finds that the complaint does

---

[3] NMS's argument that its own lawsuit qualifies as a "suit" under the CGL Policy would require Kinsale to defend and indemnify NMS in a lawsuit brought by itself. Moreover, the present lawsuit seeks damages because of Kinsale's alleged breach of the implied covenant of good faith and fair dealing, not because of bodily injury or property damage.

not establish the existence of an actual case or controversy, and therefore **GRANTS** Kinsale's motion to dismiss NMS's first and second causes of action under Rule 12(b)(1).

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

NMS's third cause of action alleges that by failing to investigate and process NMS's claim in a reasonably timely manner, Kinsale effectively deprived NMS of the benefit of the CGL Policy and therefore breached the policy's implied covenant of good faith and fair dealing. [Doc. No. 1-2 ¶¶ 61-72.]

A claim for breach of the implied covenant of good faith and fair dealing cannot be maintained unless coverage is required under the policy at issue. *Hovannisian*, 221 Cal. Rptr. 3d at 897 (citing *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36 (1995)). "It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller*, 11 Cal. 4th at 36; *see also Love v. Fire Ins. Exchange*, 271 Cal. Rptr. 246, 256 (1990) ("Our conclusion that a bad faith claim cannot be maintained unless policy benefits are due is in accord with the policy in which the duty of good faith is rooted."). Because the complaint does not establish that Kinsale had a duty to defend or indemnify NMS under the CGL Policy for the reasons discussed above, NMS cannot state a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Court hereby **GRANTS** Kinsale's motion to dismiss NMS's third cause of action under Rule 12(b)(6). *See Moss*, 572 F.3d at 969 (holding that the allegations in the complaint "must be plausibly suggestive of a claim entitling the plaintiff to relief").

## IV. CONCLUSION

For the reasons set forth above, Kinsale's motion to dismiss the complaint is **GRANTED**, and NMS's claims are **DISMISSED WITHOUT PREJUDICE**.

NMS may file an amended complaint no later than **August 22, 2022**. If NMS chooses not to file an amended complaint by then, the Clerk of Court shall close this case.

It is **SO ORDERED**.

Dated: August 8, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge