UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL MECHANICAL SERVICES, INC., a California corporation,<br><br>                        Plaintiff,<br><br>v.<br><br>KINSALE INSURANCE COMPANY, an Arkansas corporation; MERCER INSURANCE COMPANY, a Pennsylvania corporation; and DOES 1-50, inclusive,<br><br>                       Defendants. | Case No.: 22-cv-576-CAB-AGS<br><br>**ORDER GRANTING DEFENDANT KINSALE INSURANCE COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 23] |

This matter is before the Court on Defendant Kinsale Insurance Company's ("Kinsale") motion to dismiss Plaintiff National Mechanical Services, Inc.'s ("NMS") first amended complaint ("FAC"). [Doc. No. 23.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Kinsale's motion to dismiss is **GRANTED**.

**I.    Procedural History**

Plaintiff NMS initiated this lawsuit in San Diego Superior Court on March 24, 2022,

against Defendants Kinsale and Mercer Insurance Company ("Mercer"). [Doc. No. 1-2.] Mercer removed the matter to federal court on April 25, 2022. [Doc. No. 1.] On August 8, 2022, the Court granted Kinsale's motion to dismiss the complaint, but the Court gave NMS leave to file an amended complaint. [Doc. No. 18.]

On August 22, 2022, NMS filed the FAC, which also named Kinsale and Mercer as defendants. [Doc. No. 19.] On August 31, 2022, the Court granted the parties' joint motion to dismiss Mercer without prejudice, leaving Kinsale as the only defendant. [Doc. No. 20.] Kinsale now moves to dismiss the FAC because NMS' claims are not ripe and for failure to state a claim. [Doc. No. 23.]

**II.   Allegations in the Original Complaint**

The FAC repeats all of the allegations from the original complaint. Those allegations are summarized in detail in the Court's dismissal order and will not be repeated at length here. In short, NMS is in the business of maintaining, repairing, and servicing generators in power plants, refineries, and petrochemical plants across the United States. [Doc. No. 19 at 2, ¶ 1.] NMS holds a commercial general liability insurance policy with Kinsale, policy number 0100013169-7 (the "CGL Policy"). [*Id.* at 2, ¶ 3.] The CGL Policy was in effect from July 21, 2020, to July 21, 2021. [*Id.*]

In May 2021, NMS was hired by Onward Energy ("Onward") to perform preventative maintenance on three of Onward's generators. [*Id.* at 4, ¶ 13.] While NMS was working on Onward's generators, Onward's #6 generator was damaged and had to be repaired. [*Id.* at 6-8, ¶¶ 20-28.] Onward then invoiced NMS for all costs related to repairing the #6 generator from the date of damage up to August 26, 2021, totaling over $1.35 million. [*Id.* at 8 ¶ 29, 11 ¶ 36.] NMS believes that Onward's damages should be covered by the CGL Policy.

As detailed in the Court's prior order, although there was some communication between NMS and Kinsale concerning NMS' claim for Onward's damages, NMS alleges that Kinsale rarely returned phone calls and was not as responsive as it should have been. However, in January 2022, a Kinsale representative informed NMS's owner that "a good

chunk of [the claim] looks like it will be covered." [*Id.* at 12, ¶ 39.]  When Kinsale did not follow up with a formal letter agreeing to cover the claim for Onward's damages, NMS filed this lawsuit on March 24, 2022.

The FAC does not add any substantive allegations of events that occurred prior to the initiation of this lawsuit.  Rather, all of the new allegations in the FAC concern events that occurred after the complaint was filed, many of which occurred even after the Court dismissed the original complaint.  Specifically, on April 1, 2022, Kinsale sent NMS a reservation of rights letter that, among other things, stated that "Kinsale will provide [NMS] with a defense if Onward Energy files a 'suit.'" [Doc. No. 19 at 176.]  Kinsale directed NMS to inform Kinsale if Onward files a suit. [Doc. No. 19 at 13-14, ¶ 44.]  On August 12, 2022, despite no suit having been filed by Onward, Kinsale advised NMS that Kinsale had assigned a law firm to represent and defend NMS with respect to the claim concerning Onward's #6 generator. [Doc. No. 19 at 179.]

On August 16, 2022, Onward's counsel sent a demand letter to NMS for $1,400,513.14 in damages arising from the incident with the #6 generator. [Doc. No. 19 at 183.]  The letter stated that the settlement offer would expire on August 19, 2022, and that if NMS did not accept the demand by that date, Onward would "immediately file suit." [Doc. No. 19 at 183.]  NMS forwarded Onward's demand letter to Kinsale on the day it was received from Onward. [Doc. No. 19 at 185.]  NMS filed the FAC on August 22, 2022, three days after Onward's settlement demand expired.  The FAC does not allege that Onward had filed suit against NMS.

### III. Discussion[1]

The Court dismissed the original complaint because the "clear and explicit meaning" of the CGL Policy, "interpreted in [its] ordinary and popular sense" (*Hovannisian v. First Am. Title Ins. Co.*, 221 Cal. Rptr. 3d 883, 891-92 (2017)), indicates that Kinsale only has a

---

[1] The legal standards set forth in the order dismissing the original complaint [Doc. No. 18 at 4-5] are equally applicable here.

duty to defend NMS against civil lawsuits seeking damages because of "bodily injury or property damage." [Doc. No. 19 at 37.] At the time the Court dismissed the original complaint, no suit had been filed against NMS. Therefore, at least as of August 8, 2022 (the date the Court dismissed the original complaint), Kinsale did not have a duty to defend NMS from Onward's demands arising out of the incident with the #6 generator. *See Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 886 (1998) ("The duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer. Prior to the filing of a complaint, there is nothing for the insured *to tender defense of*, and hence no duty to defend arises.") (*emphasis* in original; internal citation and quotation marks omitted).

Further, because "there is no duty to defend, there *cannot be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal. 4th 945, 958 (2001) (*Powerine*) (*emphasis* in original). Finally, there cannot be a claim for breach of the covenant of good faith and fair dealing in the absence of a duty to defend or duty to indemnify. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995) ("[I]f there is no . . . duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer."); *see also San Diego Hous. Comm'n v. Indus. Indem. Co.*, 68 Cal. App. 4th 526, 544 (1998) ("Where a breach of contract cannot be shown, there is no basis for a finding of breach of the covenant."). Accordingly, the Court dismissed all of the claims in the original complaint and gave NMS the opportunity to amend the complaint.

The FAC does not remedy the primary deficiency that required dismissal of the original complaint—that no suit has been filed against NMS. Thus, for all of the same reasons set forth in the dismissal of the original complaint, the FAC fails to state a ripe claim as well. Neither the new allegations in the FAC, nor the additional allegations asserted in NMS's opposition brief concerning events that happened after the FAC was

filed[2] overcome this fatal flaw in NMS's case. If anything, these new allegations further undermine NMS's case. Indeed, NMS's continued dissatisfaction with Kinsale's handling of this claim to date demonstrates that NMS seeks not to require Kinsale to defend it or indemnify it; rather, NMS seeks to require Kinsale pay Onward for the full amount Onward demands without Onward filing a lawsuit. NMS cites to no authority supporting such a proposition, and the existence of such a duty cannot be reconciled with California law.[3]

### IV. Conclusion

To the extent the FAC seeks a declaratory judgment that based on the current status of events between NMS and Onward, with no lawsuit having been filed against NMS by Onward, Kinsale is required to defend and indemnify NMS, the FAC fails to state a claim because, for all of the reasons set forth herein and in the order dismissing the original complaint: (1) Kinsale cannot have a duty to defend NMS if Onward has not filed suit; (2) without a duty to defend, there is no duty to indemnify; and (3) without a duty to defend or duty to indemnify, there cannot be a breach of the covenant of good faith and fair dealing.

To the extent the FAC seeks a declaratory judgment that if Onward sues NMS at some point in the future, Kinsale will be required to defend and indemnify NMS with

---

[2] In its opposition, NMS adds that after receiving Onward's August 16, 2022, demand letter, Kinsale's defense counsel in this case emailed Onward's counsel to advise that Kinsale had "agreed as an accommodation to NMS to provide pre-suit counsel and to reach out in an attempt to resolve this matter short of litigation." [Doc. No. 25-1 at 59.] The email also stated: "We trust that given the circumstances you will not be filing suit as stated in your letter and will work with [the pre-suit counsel] toward a resolution of your client's claims if one can be had." [*Id.*] NMS tries to portray this email to Onward as part of some sort of scheme by Kinsale to obtain dismissal of this coverage lawsuit, and that it has harmed NMS, but that argument does not hold up to scrutiny. Dismissal of this lawsuit ultimately will have no impact on Kinsale's coverage obligations if Onward actually files suit. On the other hand, if Onward never sues NMS, NMS will never need a defense and never become legally liable for any damages to Onward for which it would need coverage from Kinsale.

[3] NMS does not hide the fact that its desperation for Kinsale to pay Onward everything Onward demands stems from NMS's desire for Onward to pay NMS an outstanding invoice totaling $118,026.75. [Doc. No. 19 at 9, ¶ 30.] Yet, NMS's business decision not to pursue litigation against Onward for the amount of this unpaid invoice does not alter Kinsale's coverage obligations (if any) to NMS arising out of the #6 generator incident. Likewise, any agreement between Onward and NMS that Kinsale should pay Onward for the damage to the #6 generator is irrelevant to Kinsale, whose obligations are governed by its contract with NMS and not by any agreement NMS reaches with Onward.

respect to any claims asserted in that lawsuit, the complaint is not ripe because "the determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the [underlying] complaint with the terms of the policy." *Waller*, 11 Cal. 4th 1, 26.  Moreover, Onward may never sue NMS, in which case there will never be a duty to defend or indemnify.

Accordingly, it is hereby **ORDERED** that Kinsale's motion to dismiss the FAC is **GRANTED**.  Further, because Onward has not filed a lawsuit against NMS, any further amendment would be futile.  The FAC is therefore **DISMISSED WITH PREJUDICE**.[4]  The Clerk of Court shall **CLOSE** this case.

It is **SO ORDERED**.

Dated: October 4, 2022

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[4] To be clear, this dismissal does not preclude NMS from filing a new lawsuit seeking insurance coverage from Kinsale if Onward files a lawsuit against NMS and NMS believes that Kinsale does not comply with its coverage obligations under the CGL Policy with respect to Onward's lawsuit and the claims asserted therein.  This coverage lawsuit is dismissed with prejudice simply because NMS cannot state a claim for declaratory relief that Kinsale has a duty to defend or indemnify NMS, or that Kinsale has violated the covenant of good faith and fair dealing, as things currently stand.